UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL J. AUGER, )
      Plaintiff )
)
)
v. ) Civil Action No. 10-30025-MAP
)
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
      Defendant )

REPORT AND RECOMMENDATION REGARDING
PLAINTIFF'S MOTION TO REVERSE and DEFENDANT'S
MOTION TO AFFIRM (Document Nos. 9 and 11)
March 28, 2011

NEIMAN, U.S.M.J.

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") regarding an individual's entitlement to Supplemental Security Income ("SSI") pursuant to 42 U.S.C. §§ 405(g) and 1381(c)(3). Michael J. Auger ("Plaintiff") asserts that the Commissioner's decision denying him such benefits -- memorialized in a December 29, 2008 decision of an administrative law judge -- is not based on substantial evidence of record. Plaintiff has filed a motion to reverse the decision and the Commissioner, in turn, has moved to affirm.

The parties' motions have been referred to this court for a report and recommendation. *See* 28 U.S.C. §636(b)(1)(B). For the reasons which follow, the court will recommend that Plaintiff's motion be allowed, to the extent it seeks a remand, and that the Commissioner's motion be denied.

I. S̲t̲a̲n̲d̲a̲r̲d̲ ̲o̲f̲ ̲R̲e̲v̲i̲e̲w̲

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted).

The resolution of conflicts in evidence and the determination of credibility are for the Commissioner, not for doctors or the courts. *Rodriguez*, 647 F.2d at 222; *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987). A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim. *See Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In the end, the court maintains the power, in appropriate circumstances, "to enter . . . a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand [ ] the cause for a rehearing." 42 U.S.C. § 405(g).

II. B̲a̲c̲k̲g̲r̲o̲u̲n̲d̲

Since the parties are familiar with the pertinent facts, only a brief outline is

required. Plaintiff, born in 1960, filed for SSI benefits on June 30, 2003, with the date of his alleged onset of disability amended to June 1, 2003. (Administrative Record ("A.R.") at 26-27, 54-58, 278.) Plaintiff claimed that he was disabled because of depression, high blood pressure, and sleep apnea. (A.R. at 28.) After Plaintiff's claim was denied both initially and upon reconsideration, he requested a hearing in front of an administrative law judge, which hearing took place on February 22, 2005. (A.R. at 28-30, 33-35, 275-312.) On May 16, 2005, the administrative law judge issued a decision finding that Plaintiff had the residual functional capacity to perform a significant range of sedentary work and was not under a disability despite having the following impairments: sleep apnea, Dupuytren's contracture of the right hand, and depression. (A.R. at 23-24.)

On September 9, 2005, the Appeals Council denied Plaintiff's request for review. (A.R. at 8-10, 12.) Plaintiff appealed to the United States District Court (see Civil Action No. 05-30254-MAP), which remanded the case on March 2, 2006. On March 6, 2007, a second hearing occurred before the same administrative law judge who determined in a decision dated March 30, 2007, that Plaintiff had the residual functional capacity to perform a range of light work and had not been under a disability since the alleged onset date. (A.R. at 568-601, 363, 367.) Plaintiff requested a review of hearing decision, and on October 26, 2007, the Appeals Council assumed jurisdiction of the case, combined it with another claim Plaintiff filed on June 30, 2005, and, on January 7, 2008, again remanded the matter. (A.R. at 381-84, 397-400.) The Appeals Council's remand directed that, "before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the

3

occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p)." (A.R. at 396.)

A different administrative law judge (hereinafter "ALJ") held a hearing on August 13, 2008. (A.R. at 602-34.) On December 29, 2008, the ALJ issued a decision finding that Plaintiff, who was forty-eight years old at the time, had the following severe impairments: sleep apnea, Dupuytren's contractures of the right hand, epididymo-orchitis, depression with anxiety, obesity, a right shoulder injury, hepatitis C, and mild joint space narrowing of the right hip. (A.R. at 336.) Nonetheless, the ALJ determined that Plaintiff had the residual functional capacity to perform a range of light work -- albeit limited to the performance of simple and unskilled tasks with no more than occasional contact with co-workers and no more than incidental contact with the public -- and, therefore, was capable of performing work that exists in significant numbers in the national economy. (A.R. at 339.) On November 30, 2009, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's December 29, 2008 decision final. (A.R. at 313-15.) In due course, Plaintiff filed this civil action, the Commissioner compiled the administrative record, and the parties submitted the cross-motions currently at issue.

### III. DISCUSSION

An individual is entitled to SSI benefits if, among other things, he is under a disability and has a financial need. *See* 42 U.S.C. § 1381a. Plaintiff's need is not challenged.

A. <u>Disability Standard and the 2008 ALJ Decision</u>

4

The Social Security Act (the "Act") defines disability, in part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). *See also* 42 U.S.C. § 1382c(a)(3)(A) (similar). An individual is considered disabled under the Act

> only if his physical and mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). *See generally Bowen v. Yuckert*, 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits the claimant's physical or mental capacity to perform basic work-related functions." If he does not have an impairment of at least this degree of severity, he is automatically not disabled.
>
> Third, does the claimant have an impairment equivalent to a specific list of impairments in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.
>
> . . . .

> Fourth . . . does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.
>
> Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so he is disabled; if not he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982).

In the instant case, the ALJ found as follows with respect to these questions: Plaintiff has not engaged in substantial gainful activity since June 30, 2003, the application date (step 1); he has the following severe impairments: sleep apnea, Dupuytren's contractures of the right hand, epididymo-orchitis, depression with anxiety, obesity, a right shoulder injury, hepatitis C, and mild joint space narrowing of the right hip (step 2); but those impairments do not meet or medically equal one of the listed impairments in Appendix 1 (step 3). The ALJ went on to find that Plaintiff was unable to perform any past relevant work -- which included work as a drywall installer, farm laborer, store laborer, and grinder -- as he could no longer satisfy the lifting or carrying requirements of those jobs (step 4), but that he could perform simple and unskilled jobs that exist in significant numbers in the national economy, such as a surveillance system monitor (DOT #379.367-010) (step 5). As a result, the ALJ concluded that Plaintiff had not been under a disability since the date of his application. (A.R. at 351.)

B. Plaintiff's Challenge to the ALJ's Decision

In support of his motion, Plaintiff argues that the ALJ's step 5 analysis was not supported by substantial evidence because the ALJ failed to address and resolve the conflict between the vocational expert's testimony and the relevant DOT classification. More specifically, Plaintiff argues that the ALJ's finding with regard to his residual

6

functional capacity, namely, that Plaintiff could only do "simple and unskilled" work, is incompatible with the only job title offered by the vocational expert -- that of "surveillance system monitor."[1]

As listed in the DOT, a surveillance system monitor requires the following qualifications: Specific Vocational Preparation ("SVP") level two and General Educational Development ("GED") *reasoning* level three. DOT #379.367-010, 1991 WL 673244.[2] Plaintiff asserts, however, that the ALJ himself had determined Plaintiff was limited to "simple and unskilled" tasks, which determination appears to be in conflict with the DOT job listing for a surveillance system monitor -- specifically in conflict with GED

---

[1] According to the DOT, a surveillance system monitor:

> [m]onitors premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors, and notifies authorities by telephone of need for corrective action[;] [o]bserves television screens that transmit in sequence views of transportation facility sites[;] [p]ushes hold button to maintain surveillance of location where incident is developing, and telephones police or other designated agency to notify authorities of location of disruptive activity[; and] [a]djusts monitor controls when required to improve reception, and notifies repair service of equipment malfunctions.

DOT #379.367-010, 1991 WL 673244.

[2] According to the DOT, SVP "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT Appendix C, 1991 WL 688702. SVP level two means "[a]nything beyond short demonstration up to and including 1 month." DOT #379.367-010, 1991 WL 673244. In turn, GED "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT Appendix C, 1991 WL 688702. "This is education of a general nature which does not have a recognized, fairly specific occupational objective." *Id.* "Ordinarily, such education is obtained in elementary school, high school, or college[;] [h]owever, it may be obtained from experience and self-study." *Id.* GED reasoning level three means the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations." DOT #379.367-010, 1991 WL 673244.

reasoning level three.  As noted *supra* (n.2), level three reasoning is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations."  DOT #379.367-010, 1991 WL 673244.  Although the ALJ did include the words "simple and unskilled" in the hypothetical posed to the vocational expert, Plaintiff argues, the ALJ did not provide a reasonable explanation for the conflict between this description and the reasoning level.  Indeed, Plaintiff points out, the issue of reasoning level was not discussed at all.  Accordingly, Plaintiff argues, this matter ought to be remanded for yet another hearing.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (reversing and remanding a similar issue "to allow the ALJ to address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the [vocational expert]").

For his part, the Commissioner argues that the ALJ's decision was based on substantial evidence.  More to the point, the Commissioner notes that Plaintiff did not raise at the administrative hearing the potential conflict between the ALJ's residual functional capacity finding and the DOT listing cited by the vocational expert, a failure on Plaintiff's part which should foreclose further review by this court.  *See Donahue v. Barnhart*, 279 F.3d 441, 446-47 (7th Cir. 2002) (reasonable explanation with regard to such a potential conflict need only be provided if the conflict was identified at the administrative hearing).  Generally speaking, however, Social Security Ruling 00-4p provides that it is up to the *adjudicator* to identify any conflict between occupational evidence provided by the vocational expert and information in the DOT.  *Id.*, 2000 WL

8

1898704. See Whitzell v. Barnhart, 429 F.Supp.2d 361, 365 (D. Mass. 2006) ("SSR 00-4p states clearly that a hearing officer must resolve conflicts between the [DOT] and vocational expert's testimony before using vocational expert evidence in its determination of disability"). See also Hackett, 395 F.3d at 1176 (despite the conflict not being "raised until the district court proceedings that commenced two years after the ALJ hearing, . . . a plaintiff challenging a denial of disability benefits under 42 U.S.C. § 405(g) need not preserve issues in the proceedings before the Commissioner or her delegates"); Boone v. Barnhart, 353 F.3d 203, 208 n.14 (3rd Cir. 2004) (burden is "on the ALJ to uncover the existence of any conflicts between the [vocational expert]'s testimony and the DOT: Social Security Ruling 00-4p requires that the ALJ ask the vocational expert whether any possible conflict exists between the vocational expert's testimony and the DOT, and that, if the testimony does appear to conflict with the DOT, to 'elicit a reasonable explanation for the apparent conflict'"). Cf. Sims v. Apfel, 530 U.S. 103, 105, 110-11 (2000) ("[I]t is well settled that there are wide differences between administrative agencies and courts . . . . Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.").

To be sure, the court in Carey v. Apfel, 230 F.3d 131 (5th Cir. 2000), also cited by the Commissioner, determined that a claimant should not be able to scan the record for conflicts between the vocational expert's testimony and the DOT. The court nevertheless determined that a remand may be required where there is a "discrepancy between the ALJ's determination of the claimant's residual functional capacity and the vocational expert's testimony that the claimant can perform certain identified jobs with

9

inconsistent skill requirements."  *Id.* at 147.  Moreover, in the case at bar, the Appeals Council had specifically placed the ALJ on notice of a potential conflict and the need for a reasonable explanation.  As noted, the Appeals Council's remand instructions stated that "before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p)."

As it turns out, a nearly identical issue was addressed in *Hackett*, where the claimant's residual functional capacity, which called for simple and routine work tasks, was in potential conflict with the level three reasoning level required of a surveillance system monitor.  *Id.*, 395 F.3d at 1176.  The court determined that a "level-two reasoning level appears more consistent with Plaintiff's [residual functional capacity]," which "requires the worker to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations."  *Id.*  Accordingly, the court remanded the case for a further hearing.  *See id.  See also Yurek v. Astrue*, 2009 WL 2848859, at * 9 (E.D.N.C. Sep. 2, 2009) ("This Court is aware of only two cases holding that a limitation to simple work is not inconsistent with a reasoning level of three[;] . . . [h]owever, the Court finds the reasoning employed unpersuasive."); *Mead v. Barnhart*, 2004 WL 2580744, at *3 (D.N.H. Nov. 15, 2004) ("The ALJ's failure to inquire about and explain the apparent conflict between the requirement in his hypothetical that jobs be limited to simple, repetitious tasks and the DOT description of the surveillance system

monitor job precludes reliance on the vocational expert's opinion that Mead could do that job."); *Hall-Grover v. Barnhart*, 2004 WL 1529283, at *4 (D. Me. Apr. 30, 2004) ("SVP ratings speak to the issue of the level of vocational preparation necessary to perform the job, not directly to the issue of a job's simplicity, which appears to be more squarely addressed by the GED [reasoning level] rating."); *Allen v. Barnhart*, 2003 WL 22159050, at *10 (N.D. Cal. Aug. 28, 2003) ("The need to follow 'detailed' and 'involved' instructions [as is needed for reasoning level two] exceeds the ALJ's limitation of plaintiff to 'simple, routine tasks.'").

The Commissioner's reliance on *Foley v. Astrue*, 2010 WL 2507773 (D. Mass. June 17, 2010), in this court's opinion, is equally unavailing. There, the claimant argued that he could not perform his past job as a gas station cashier because it involved more than simple tasks and had a reasoning level of three. *Id.*, at *9. Because the SVP level of the job was consistent with the SVP level of the claimant, however, the court denied the claimant's motion to reverse, regardless of reasoning level. *Id.* As distinct from the situation at bar, however, the administrative law judge's residual functional capacity did not include the words "simple" or "unskilled." *Id.*, at *5. The case also centered on step 4, *i.e.*, whether the claimant could perform past work. Here, the hearing focused on step 5 -- whether the claimant could do any other work in the national economy -- when the burden of proof shifts to the Social Security Administration. *See Seavey v. Barnhart*, 276 F.3d 1, 5 (1st Cir. 2001) ("the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform"). Thus, the ALJ's failure to more comprehensively address the conflict became even more problematic.

Given the fact that this case has been twisting through the administrative and judicial systems since Plaintiff's 2003 application date, it may well be unfortunate to yet again vacate and remand this matter and thereby prolong its resolution. However, despite the fact that specific remand instructions were given to the ALJ to resolve any conflict between the vocational expert's testimony and the information in the DOT, the vocational expert was not asked and the ALJ did not specifically discuss the reasoning level of the only job offered. Accordingly, the court believes that this articulated conflict needs to be addressed again and a reasonable explanation provided.

IV. CONCLUSION

For the foregoing reasons, the court recommends that Plaintiff's motion to reverse, to the extent it seeks a remand, be ALLOWED and that the Commissioner's motion to affirm be DENIED.[3]

DATED: March 28, 2011

                                     /s/   Kenneth P. Neiman
                                     KENNETH P. NEIMAN
                                     U.S. Magistrate Judge

---

[3] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604 (1st Cir. 1980). See also Thomas v. Arn, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.