UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MICHAEL J. AUGER,           )
    Plaintiff               )
                            )
    v.                      )    C.A. No. 10-cv-30025-MAP
                            )
MICHAEL J. ASTRUE,          )
Commissioner, Social        )
Security Administration,    )
    Defendant               )

<u>MEMORANDUM AND ORDER RE:
REPORT AND RECOMMENDATION REGARDING
PLAINTIFF'S MOTION TO REVERSE COMMISSIONER
AND DEFENDANT'S MOTION TO AFFIRM COMMISSIONER</u>
(Dkt. Nos. 9, 11, & 17)

June 14, 2011

PONSOR, D.J.

I. <u>INTRODUCTION</u>

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration regarding Plaintiff's entitlement to Supplemental Security Income pursuant to 42 U.S.C. §§ 405(g) and 1381(c)(3). Plaintiff and Defendant filed cross-motions to reverse and to affirm the Commissioner's decision, and these motions were referred to Magistrate Judge Kenneth P. Neiman for a report and recommendation. The argument centered on a single legal question: did the administrative law judge ("ALJ") err by not addressing a conflict between

the vocational expert's ("VE") testimony that Plaintiff could work as a surveillance system monitor despite a limitation to "simple and unskilled tasks," and the Dictionary of Occupational Title's ("DOT") classification of that job as involving level-three reasoning?

On March 28, 2011, Judge Neiman issued his Report and Recommendation that answered this question in the affirmative and recommended that Plaintiff's motion be allowed, Defendant's motion denied, and the case remanded. Defendant filed a timely objection. For the reasons that follow, upon de novo review, the court will decline to adopt the Report and Recommendation (Dkt. No. 17). The court will allow Defendant's Motion to Affirm the Decision of the Commissioner (Dkt. No. 11) and deny Plaintiff's Motion to Reverse the Decision of Commissioner (Dkt. No. 9).

## II. BACKGROUND

A. Procedural History.

Plaintiff Michael J. Auger alleges disability since June 1, 2003, as a result of sleep apnea, Dupuytren's contractures of the right hand, epididymo-orchitis, depression with anxiety, obesity, a right shoulder impairment, joint space narrowing of the right hip, a back disorder, hepatitis C, and hypertension. (A.R. 336-37.)

Plaintiff's claim was denied initially and again on reconsideration. (A.R. 28-35.) Plaintiff then requested a hearing with an ALJ, which was held on February 22, 2005. Approximately three weeks later, the ALJ issued a decision finding that Plaintiff was not disabled. (A.R. 23-24.) On September 9, 2005, the Appeals Council denied Plaintiff's request for review. (A.R. 8-10, 12.) Plaintiff appealed to this court, which, upon the assent of both parties, remanded the case on March 2, 2006. See No. 05-cv-30254-MAP.

On March 6, 2007, Plaintiff appeared for a second hearing before the same ALJ, who again concluded that Plaintiff was not disabled. (A.R. 568-601, 363, 367.) Upon review, the Appeals Council remanded the matter for a further hearing before a new ALJ. (A.R. 394-96.)

B. The ALJ's Findings.[1]

On August 13, 2008, Plaintiff appeared for a third hearing before a different judge, who, in December 2008,

---

[1] The court will forego a lengthy recitation of Plaintiff's medical history, given that it is not of primary importance to this decision. It is worth noting, however, that the ALJ presented a thorough discussion of Plaintiff's medical history in his decision, almost all of which involved complaints of physical distress. (A.R. 339-48.)

also rendered a decision unfavorable to Plaintiff. (A.R. 602-34.) At Step One of the disability adjudicative process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 30, 2003. (A.R. 336.) At Step Two, the ALJ found that Plaintiff had the following severe impairments: sleep apnea, Dupuytren's contractures of the right hand,[2] epididymo-orchitis,[3] depression with anxiety, obesity, a right shoulder impairment, joint space narrowing of the right hip, a back disorder, hepatitis C, and hypertension. (A.R. 336.) At Step Three, the ALJ held that Plaintiff's impairments did not meet or medically equal a listed impairment. (A.R. 337.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform "a limited range of

---

[2] A Dupuytren's contracture is a hand deformity that affects the connective tissue under the skin of the patient's palm and often develops gradually over an extended period of time. See http://www.mayoclinic.com/health/dupuytrens-contracture/DS00732.

[3] Orchitis is an inflammation of one or both testicles and often results from epididymitis, an inflamation of the coiled tube (epididymis) at the back of the testicle that stores and carries sperm. See http://www.mayoclinic.com/health/orchitis/DS00602.

4

light work" involving "simple and unskilled tasks with no more than occasional contact with co-workers and no more than incidental contact with the public." (A.R. 339.) At Step Four, the ALJ found that Plaintiff could not return to his past work as a drywall installer, a store laborer, or a grinder. (A.R. 349.) However, at Step Five, the ALJ concluded, based on the VE's testimony, that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform -- specifically, that of surveillance system monitor. (A.R. 349-50.) The ALJ then stated that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the <u>Dictionary of Occupational Titles</u>."[4] (A.R. 350.)

### III. <u>STANDARD OF REVIEW</u>

Judicial review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner

---

[4] The ALJ made this assertion after having already asked the VE if his testimony was consistent with the DOT and after having received an affirmative response. (A.R. 631.)

applied the correct legal standards. Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The responsibility for weighing conflicting evidence and resolving issues of credibility belongs to the Commissioner and his designee, the administrative law judge. See id. at 10. The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is such evidence "as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Accordingly, the court must affirm the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). This is true "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

## IV. DISCUSSION

Plaintiff now appeals the most recent denial of benefits, arguing that the ALJ violated Social Security

Ruling 00-4P, which states that occupational evidence provided by a VE "generally should be consistent with the occupational information supplied by the DOT" and that, in the face of an "apparent, unresolved conflict," the ALJ must elicit a reasonable explanation before relying on the VE's testimony. SSR 96-7p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000). Here, Plaintiff asserts that the ALJ erred by failing to address a conflict between the VE's testimony that Plaintiff could perform the job of surveillance system monitor despite being limited to "simple and unskilled" work and the DOT's description of this job as involving a reasoning level of three. (A.R. 339.) This court disagrees.

Plaintiff's argument highlights an incongruity that exists between the Social Security regulations and the DOT, one that has prompted appeals similar to this one throughout the country. As one federal court recently explained:

> [T]he Social Security regulations and the DOT use markedly different standards for addressing a claimant's ability to understand, remember, and concentrate on job duties. The regulations divide such abilities into only two categories -- "short and simple instructions" and "detailed" or "complex" ones -- whereas the DOT uses a more

7

graduated scale ranging from one to six that does not easily accommodate itself to the regulations' simple/complex dichotomy. Thus, no one-to-one parallel can be found between "simple" as it is used under the regulations and the DOT's requirements . . . .

Thompkins v. Astrue, No. 09-C-1339, 2010 WL 5071193 (N.D. Ill. Dec. 6, 2010) (internal citations omitted).

As Thompkins notes, the DOT classifies each occupation according to a six-level system based on general educational development ("GED") in mathematics, literacy, and reasoning, with six being the most advanced and one being the least advanced. See DOT at 1011. Here, the relevant DOT classification is level-three reasoning, as that is the level attributed to the job of surveillance system monitor and identified by Plaintiff as beyond his capacity.[5] See

---

[5] The DOT describes this occupation as follows:

Monitors premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors, and notifies authorities by telephone of need for corrective action: Observes television screens that transmit in sequence views of transportation facility sites. Pushes hold button to maintain surveillance of location where incident is developing, and telephones police or other designated agency to notify authorities of location of disruptive activity. Adjusts monitor controls when required to improve reception, and

DOT 379.367-010, 1991 WL 673244. The DOT explains that a job involving level-three reasoning requires the individual to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "deal with problems involving several concrete variables in or from standardized situations." Id. Plaintiff contends that these requirements are inconsistent with his limitation to simple and unskilled tasks.

A split of authority exists on this issue. Both the Seventh Circuit and the Eighth Circuit have held that a job requiring level-three reasoning does not necessarily conflict with an RFC limited to simple and unskilled work. See Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009); Hiller v. Social Security Administration, 486 F.3d 359, 367 (8th Cir. 2007). Accord Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007). The Fifth Circuit reached the opposite conclusion. See Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that "level-two reasoning appears

---

notifies repair service of equipment malfunctions. DOT 379.367-010, 1991 WL 673244.

more consistent with Plaintiff's RFC," which was limited to "simple and routine work tasks").[6]

The majority of federal district courts, including a court in this district, have followed the Seventh and Eighth Circuits. See Abel v. Astrue, No. 3:09-cv-327-TSL-FKB, 2011 WL 1099890, at *7 (S.D. Miss. Mar. 2, 2011), adopted, 2011 WL 1044155 (S.D. Miss. Mar. 22, 2011); Foley v. Astrue, No. 09-cv-10864-RGS, 2010 WL 2507773, at *9 (D. Mass. June 17, 2010);[7] Hurtado v. Astrue, No. 09-60930, 2010 WL 1850261, at *11 (S.D. Fla. Apr. 14, 2010); Webb v. Astrue, No. 4:08-CV-747-Y, 2010 WL 1644898, at *12 n.10 (N.D. Tex. Mar. 2,

---

[6] Notably, a federal district court in the Tenth Circuit recently distinguished Hackett and limited its holding to the facts presented in that case. See Blanchard v. Astrue, No. 09-1143-SAC, 2010 WL 2925180, at *11-12 (D. Kan. July 21, 2010) (holding that ALJ did not err by failing to address conflict between a limitation to "simple, repetitive work" and VE's suggestion that claimant could perform jobs involving level-three reasoning where, like the present case and unlike Hackett, the ALJ expressly asked the VE if his testimony was consistent with the DOT).

[7] Although the ALJ in Foley limited the claimant to "light and unskilled" work as opposed to "simple and unskilled" work, this distinction is immaterial because limiting the claimant to unskilled work ensures that he will be performing only "simple" duties. See 20 C.F.R. § 416.968(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.").

2010); Robinson v. Astrue, No. 4:08-cv-1980MLM, 2010 WL 481045, at *18 (E.D. Mo. Feb 4, 2010); Blanchard v. Astrue, No. 09-1143-SAC, 2010 WL 2925180, at *11-12 (D. Kan. July 21, 2010); Koontz v. Astrue, No. 08-2153-LAB (WVG), 2010 WL 3339388, at *8-9 (S.D. Cal. July 26, 2010); Cottman v. Astrue, No. BPG-08-1753, 2009 WL 4884506, at *6 n.5 (D. Md. Dec. 9, 2009). But see Grimes v. Astrue, No. 09-2208-JEM, 2011 WL 164537 (C.D. Cal. Jan. 18, 2011); Yurek v. Astrue, No. 5:08-CV-500-FL, 2009 WL 2848859, at *9 n.10 (E.D.N.C. Sept. 2, 2009); Mead v. Barnhart, No. Civ. 04-139-JD, 2004 WL 2580744 (D. N.H. Nov. 15, 2004); Hall-Grover v. Barnhart, No. 03-239-P-C, 2004 WL 1529283 (D. Me. Apr. 30, 2004).[8]

This court joins the great weight of authority on this issue and holds that no conflict existed between the VE's testimony that Plaintiff could work as a surveillance system monitor despite being limited to "simple and unskilled"

---

[8] While not directly on point, it is notable that the same court recently "abandon[ed] its minority position" that jobs involving level-two reasoning are inconsistent with an RFC limited to simple tasks. See Pepin v. Astrue, No. 09-464-P-S, 2010 WL 3361841, at *4-6 (D. Me. Aug. 24, 2010), adopted, 2010 WL 3724286 (D. Me. Sep. 16, 2010) (observing that "the clear majority of the courts that have addressed this issue since 2005, including three circuit courts of appeal, agree [that no conflict exists]").

work, and the DOT's level-three classification.

Significantly, nothing in the record or in the ALJ's decision suggests that Plaintiff would be mentally incapable of performing this job. As to his mental limitations, the ALJ found that "due to a combination of periods of depression with sleep apnea and consequent fatigue, the [claimant] reasonably experiences mild to moderate difficulties with regard to concentration, persistence and pace." (A.R. 338.) The ALJ then explained:

> Mental status examination in March 2006 revealed appropriate concentration, fluent speech, logical and goal directed thought content. Although the claimant's treating mental health provider[s] and Dr. Bloomberg document good concentration and memory, the undersigned finds reasonable support for limiting the claimant to simple and unskilled work.

(A.R. 338 (internal citations omitted).) From this passage, it is clear that the ALJ was, if anything, over-scrupulous in limiting Plaintiff's mental RFC to simple and unskilled work, given that the record does not indicate any significant cognitive impairments. Simply put, Plaintiff's mental RFC in no way indicates that he would be unable to "apply commonsense understanding to carry out instructions

furnished in written, oral, or diagrammatic form" or to "deal with problems involving several concrete variables in or from standardized situations." DOT 379.367-010, 1991 WL 673244.

Finally, it is not enough for Plaintiff to point out that a conflict exists; he must also demonstrate that such conflict is "apparent." See SSR 96-7p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000); see also Carey v. Apfel, 230 F.3d 131 (5th Cir. 2000) ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing."). The fact that there is such broad support for the Commissioner's position is telling, as such a conflict could not be deemed "readily apparent" if most courts have found that none exists under these circumstances. See Abel v. Astrue, No. 3:09-cv-327-TSL-FKB, 2011 WL 1099890, at *7 (S.D. Miss. Mar. 2, 2011), adopted, 2011 WL 1044155 (S.D. Miss. Mar. 22, 2011) (noting that

"various courts have approached this issue in a variety of ways" and holding that a limitation to simple, repetitive tasks and a level-three classification "are not in obvious, direct conflict"). The lack of record evidence indicating that Plaintiff would be actually unable to fulfill a position requiring level-three reasoning further undermines his argument that any conflict, if one did exist, was apparent. See Terry, 580 F.3d at 478 ("[Claimant's] educational background and cognitive abilities appear to match the requirements of GED reasoning level three, and so any conflict is not so obvious that the ALJ should have pursued the question.").

In sum, there was no conflict between the VE's testimony and the DOT's level-three classification, and even if such conflict did exist, it certainly would not have been so obvious as to require the ALJ to address it before rendering a decision.

As a final note, the court is mindful of the fact that remanding this case for the third time would be a bittersweet victory for Plaintiff. As the Report and Recommendation notes, "this case has been twisting through

the administrative and judicial systems since Plaintiff's 2003 application date." (Dkt. No. 17, R&R at 12.) A third remand on this issue would only serve to prolong Plaintiff's uncertainty until the ALJ could put on the record what is already manifest -- that Plaintiff's mental RFC would not prevent him from performing the job of surveillance system monitor despite its requirement of level-three reasoning. The court's ruling spares both parties this exercise in futility. See Tetrault v. Astrue, 2011 WL 613701 (D. Mass. Feb. 11, 2011) ("To remand the case because a question was not specifically asked by the ALJ would be an exercise in futility. . . . If a remand will amount to no more than an empty exercise, the decision should be affirmed."); accord Lafrenni v. Astrue, No. 09-40143-FDS, 2011 WL 1103278 (D. Mass. Mar. 23, 2011). Plaintiff, of course, is free to apply for benefits anew, if his condition deteriorates.

## V. CONCLUSION

For the foregoing reasons, the court DECLINES TO ADOPT the Report and Recommendation (Dkt. No. 17). Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 9) is hereby DENIED, and Defendant's Motion to Affirm the Decision of the

the administrative and judicial systems since Plaintiff's 2003 application date." (Dkt. No. 17, R&R at 12.) A third remand on this issue would only serve to prolong Plaintiff's uncertainty until the ALJ could put on the record what is already manifest -- that Plaintiff's mental RFC would not prevent him from performing the job of surveillance system monitor despite its requirement of level-three reasoning. The court's ruling spares both parties this exercise in futility. See Tetrault v. Astrue, 2011 WL 613701 (D. Mass. Feb. 11, 2011) ("To remand the case because a question was not specifically asked by the ALJ would be an exercise in futility. . . . If a remand will amount to no more than an empty exercise, the decision should be affirmed."); accord Lafrenni v. Astrue, No. 09-40143-FDS, 2011 WL 1103278 (D. Mass. Mar. 23, 2011). Plaintiff, of course, is free to apply for benefits anew, if his condition deteriorates.

## V. CONCLUSION

For the foregoing reasons, the court DECLINES TO ADOPT the Report and Recommendation (Dkt. No. 17). Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 9) is hereby DENIED, and Defendant's Motion to Affirm the Decision of the

Commissioner (Dkt. No. 11) is hereby ALLOWED.  The clerk will enter judgment for Defendant.  The case may now be closed.

It is So Ordered.

                                            /s/ Michael A. Ponsor
                                            MICHAEL A. PONSOR
                                            U. S. District Judge